JOSEPH S. ALLERHAND (to be admitted pro hac vice)
 *joseph.allerhand@weil.com*
ROBERT F. CARANGELO (to be admitted pro hac vice)
 *robert.carangelo@weil.com*
STACY NETTLETON (to be admitted pro hac vice)
 *stacy.nettleton@weil.com*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

ALAN A. GREENBERG, State Bar No. 150827
 *AGreenberg@GGTrialLaw.com*
BRET D. HEMBD, State Bar No. 272826
 *BHembd@GGTrialLaw.com*
ADAM SECHOOLER, State Bar No. 293860
 *ASechooler@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1750
Costa Mesa, California 92626
Telephone:  (949) 383-2800
Facsimile:  (949) 383-2801

Attorneys for Defendant
AMERICAN INTERNATIONAL GROUP, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, et al.,<br><br>        Plaintiffs,<br><br>     v.<br><br>AMERICAN INTERNATIONAL GROUP, INC.,<br><br>        Defendant. | Case No. SACV15−687 DOC (DFMx)<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE TO S.D.N.Y. PURSUANT TO 28 U.S.C. § 1404; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge:  Hon. David O. Carter<br>Date:    June 8, 2015<br>Time:   8:30 a.m.<br>Crtrm.: 9D |

DEFENDANT AMERICAN INTERNATIONAL GROUP INC.'S MOTION TO TRANSFER VENUE TO S.D.N.Y. PURSUANT TO 28 U.S.C. § 1404

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on June 8, 2015, at 8:30 a.m., or as soon thereafter as the matter can be heard, in Courtroom 9D of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, California 92701, Defendant American International Group, Inc. ("AIG") shall move the Court for an Order, pursuant to 28 U.S.C. § 1404(a), to transfer this action from the Central District of California to the Southern District of New York. This motion is based upon this Notice of Motion and accompanying Memorandum of Points and Authorities in support thereof, as well as the Declaration of Stacy Nettleton, Esq. and the exhibits attached thereto. This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on May 1, 2015.

DATED:  May 8, 2015            WEIL, GOTSHAL & MANGES LLP


                               By:  _____/s/ Joseph S. Allerhand_____
                                     Joseph S. Allerhand (to be admitted pro
                                     hac vice)
                                     Robert F. Carangelo (to be admitted pro
                                     hac vice)
                                     Stacy Nettleton (to be admitted pro hac
                                     vice)

                               GREENBERG GROSS LLP


                               By:  _____/s/ Alan A. Greenberg_____
                                     Alan A. Greenberg
                                     Bret D. Hembd
                                     Adam Sechooler

                                     Counsel for Defendant
                                     AMERICAN INTERNATIONAL
                                     GROUP, INC.

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.     SUMMARY OF THE ARGUMENT ...................................................... 1

II.    STATEMENT OF FACTS ................................................................. 4

    A.     Plaintiffs ......................................................................... 4

    B.     Defendant ....................................................................... 4

    C.     Procedural History ......................................................... 5

        1.     The AIG Class Action ......................................... 5

        2.     The Pending SDNY Opt-Out Actions ................. 6

        3.     This Case ............................................................. 7

III.   ARGUMENT ................................................................................... 8

    A.     The "Convenience" Factors Weigh In Favor Of Transfer .................... 9

        1.     Plaintiffs' Choice Of Forum Should Be Afforded Little Deference ..................................................................... 9

        2.     New York Is The Most Convenient Forum For The Parties And Witnesses ................................. 12

        3.     The SDNY Has The Greater Ease Of Access To Sources Of Proof ............................................... 14

        4.     New York Has The Strongest Local Interest In the Controversy ......................................................... 15

        5.     This Case Will Benefit From Coordination With The Pending SDNY Actions ....................................... 16

    B.     The "Interest of Justice" Weighs In Favor Of Transfer ..................... 17

IV.    CONCLUSION .............................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Int'l Grp., Inc. Deriv. Litig.*,
   700 F. Supp. 2d 419 (S.D.N.Y. 2010), *aff'd*, 415 F. App'x 285 (2d Cir. 2011)..5

*American Pipe & Construction Co. v. Utah*,
   414 U.S. 538 (1974) ....................................................................................... 2, 7

*Bradley-Brown v. Am. Home Mortgage Servicing, Inc.*,
   2012 WL 254064 (C.D. Cal. Jan. 25, 2012) (Carter, J.) ......................... 9, 11, 14

*Broadcast Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*,
   2006 WL 1582091 (C.D. Cal. June 6, 2006)........................................... 8, 9

*Callaway Golf Co. v. Corporate Trade Inc.*,
   2010 WL 743829 (S.D. Cal. Mar. 1, 2010)........................................... 18

*Cluck v. IKON Office Solutions, Inc.*,
   2012 WL 1610789 (N.D. Cal. May 8, 2012) ...................................... 17

*Cohn v. Oppenheimerfunds, Inc.*,
   2009 WL 3818365 (S.D. Cal. Nov. 12, 2009)...................................... 16

*Ctr. for Food Safety v. Vilsack*,
   2011 WL 996343 (N.D. Cal. Mar. 17, 2011) ...................................... 10

*Foster v. Nationwide Mut. Ins. Co.*,
   2007 WL 4410408 (N.D. Cal. Dec. 14, 2007) ................................. 14, 15

*Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*,
   2014 WL 1555133 (D.N.J. Apr. 14, 2014), *aff'd*, 2014 WL 3748214 (D.N.J. July
   29, 2014) ............................................................................................... 3, 11

*Gerin v. Aegon USA, Inc.*,
   2007 WL 1033472 (N.D. Cal. Apr. 4, 2007)...................................... 10

*GIC Private Ltd. v. AIG, Inc.*,
   No. 13-CV-6565 (S.D.N.Y. Sept. 16, 2013) .................................... 6, 7

*Glaxo Grp. Ltd. v. Genetech, Inc.*,
   2010 WL 1445666 (N.D. Cal. Apr. 12, 2010)................................... 16, 17

-ii-

*Irvine Pharm. Servs., Inc. v. Arnold*,
　　2008 WL 4792513 (C.D. Cal. Oct. 28, 2008) (Carter, J.) ........................8, 12, 14

*Jarvis v. Marietta Corp.*,
　　1999 WL 638231 (N.D. Cal. Aug. 12, 1999)......................................12, 14, 15

*Jolly v. Purdue Pharma L.P.*,
　　2005 WL 2439197 (S.D. Cal. Sept. 28, 2005) ....................................................18

*Kuwait Inv. Auth. v. AIG, Inc.*,
　　No. 11-CV-8403 (S.D.N.Y. Nov. 18, 2011) ........................................................6

*Kuwait Inv. Auth. v. AIG, Inc.*,
　　No. 1l-CV-8403 ...............................................................................................6, 7

*Lord Abbett Affiliated Fund, Inc. v. AIG Inc.*,
　　No. 15-CV-774 (S.D.N.Y. Feb. 2, 2015) ..........................................................6, 7

*Madani v. Shell Oil Co.*,
　　2008 WL 268986 (N.D. Cal. Jan. 30, 2008) ................................................10, 16

*Pac. Coast Fed'n v. Gutierrez*,
　　2006 WL 194507 (N.D. Cal. Jan. 24. 2006) ......................................................17

*Pac. Life Funds v. AIG, Inc.*,
　　No. 12-CV-6071 (S.D.N.Y. Aug. 8, 2012) ........................................................6, 7

*Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*,
　　721 F.3d 95 (2d Cir. 2013), *cert. granted sub nom. Pub. Emps' Ret. Sys. v.*
　　*IndyMac MBS, Inc.*, 134 S. Ct. 1515 (2014) ......................................2, 3, 10, 11

*Rainin Instrument, LLC v. Gilson, Inc.*,
　　2006 WL 708660 (N.D. Cal. Mar. 16, 2006) ................................................17, 18

*Rowsby v. Gulf Stream Coach, Inc.*,
　　2009 WL 1154130 (C.D. Cal. Feb. 9, 2009) (Carter, J.)....................................8

*Ruiz v. Affinity Logistics Corp.*,
　　2005 WL 5490240 (N.D. Cal. Nov. 7, 2005)......................................................9

*Schmid Labs., Inc. v. Hartford Accident & Indem. Co.*,
　　654 F. Supp. 734 (D.D.C. 1986)........................................................................11

*Shalaby v. Newell Rubbermaid, Inc.*,
　　2007 WL 3144357 (N.D. Cal. Oct. 24, 2007)......................................................9

Case No. SACV15−687 DOC (DFMx)

DEFENDANT AMERICAN INTERNATIONAL GROUP INC.'S MOTION TO TRANSFER VENUE TO S.D.N.Y.
PURSUANT TO 28 U.S.C. § 1404

*Ward v. Fluor Enter., Inc.*,
   2011 WL 778720 (N.D. Cal. Mar. 1, 2011) ........................................................ 15

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*,
   2003 WL 22387598 (N.D. Cal. Oct. 14, 2003) ............................................ 10, 18

*In re Yahoo! Inc.*,
   2008 WL 707405 (C.D. Cal. Mar. 10, 2008) ...................................................... 10

*Yang v. Odom*,
   409 F. Supp. 2d 599 (D.N.J. 2006).................................................................... 10

**Statutes**

28 U.S.C. § 1404(a) ................................................................................... 3, 8, 18

DEFENDANT AMERICAN INTERNATIONAL GROUP INC.'S MOTION TO TRANSFER VENUE TO S.D.N.Y.
PURSUANT TO 28 U.S.C. § 1404

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      SUMMARY OF THE ARGUMENT

This action was brought in California state court by PIMCO Plaintiffs (defined below), who excluded themselves from the settlement class in *In re American International Group, Inc. 2008 Securities Litigation*, No. 08-CV-4772, which recently settled after nearly seven years of active litigation in the United States District Court for the Southern District of New York (the "AIG Class Action"). Defendant American International Group, Inc. ("AIG") timely removed the action to this Court on April 30, 2015. Like the AIG Class Action, PIMCO's Complaint ("Complaint") here alleges that AIG made false and misleading public statements about AIG's exposure to the subprime mortgage market between 2006 and 2008 in violation of the federal securities laws. Specifically, Plaintiffs assert claims under Section 11 of the Securities Act of 1933 based on alleged purchases of securities in AIG offerings between October 2006 and May 2008. Plaintiffs' claims substantially overlap with those in the AIG Class Action complaint, as well as nine other actions filed in the Southern District of New York ("SDNY") by other similarly situated investors who excluded themselves from the AIG Class Action settlement.

For nearly seven years, the AIG Class Action, which recently settled, as well as other related actions arising from the same set of facts, including a consolidated ERISA class action that also recently settled and a consolidated shareholder derivative action that was dismissed, were pending in the SDNY before United States District Judge Laura Taylor Swain. Moreover, Judge Swain currently oversees nine related cases raising claims nearly identical to those at issue in the AIG Class Action and this case, which were also brought by purported members of the putative class who excluded themselves from the settlement. In fact, *all* of the other actions filed by plaintiffs who opted out of the AIG Class Action settlement are pending in the SDNY. This is not surprising given that: (1) AIG is

Case No. SACV15-687 DOC (DFMx)

headquartered in New York; (2) all of the alleged misleading statements purportedly emanated from AIG in New York; (3) much of the alleged misconduct supposedly took place in New York; and (4) almost all of the principal witnesses are located in New York. In short, the SDNY is the locus of the material events in these cases and the most appropriate and convenient forum for the parties and witnesses.

Recently, motions to dismiss have been filed in all nine related cases brought by so-called opt-out plaintiffs. All of the motions seek dismissal of claims brought against AIG under Section 11 of the Securities Act of 1933 ("Securities Act") and/or Section 10(b) of the Securities Exchange Act ("Exchange Act") on the ground that these claims are time-barred, in whole or in part, under the applicable statutes of repose. AIG intends to move to dismiss Plaintiffs' Section 11 claims here (the only count asserted) on the same basis. Indeed, while Plaintiffs allege that their Section 11 claims were tolled during the pendency of the AIG Class Action, the U.S. Court of Appeals for the Second Circuit has held that that the rule of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), which generally tolls applicable statutes of limitations for putative class members during the pendency of a putative class action, does *not* apply to statutes of repose. *Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) ("*IndyMac*"), *cert. granted sub nom. Pub. Emps' Ret. Sys. v. IndyMac MBS, Inc.*, 134 S. Ct. 1515 (2014) and *cert. dismissed as improvidently granted*, 135 S. Ct. 42 (2014).

Thus, it appears that Plaintiffs' decision to file in California state court rather than the SDNY is a thinly-veiled attempt to avoid this Second Circuit precedent that will control the disposition of the claims in all of the other opt-out cases. Indeed, PIMCO can hardly contend that they filed in California merely as a matter of convenience. PIMCO and its affiliated funds have routinely availed themselves of the New York courts, having filed 13 actions in New York state and federal courts in just the past seven years. Plaintiffs' forum-shopping to avoid controlling precedent and to distinguish themselves from similarly situated plaintiffs in the

SDNY greatly weighs in favor of transfer. In fact, a federal district court in New Jersey recently transferred another action filed by investors who opted out of an AIG class action settlement and sought to evade *IndyMac* by filing in a presumably more favorable jurisdiction.[1] The same result is compelled here.

In sum, there is no reason for this case to remain an outlier and not be joined for coordination with all of the other opt-out actions raising the exact same issues as this case in the SDNY before Judge Swain.[2] Transferring this case to the SDNY will further the interests of judicial efficiency. Courts in this Circuit and elsewhere have routinely transferred actions pursuant to Section 1404(a) where, as here, all other related litigation is pending in another forum that is the locus of the alleged wrongdoing and is clearly more convenient for the parties and witnesses.

/ / /

/ / /

/ / /

/ / /

---

[1] *See Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, 2014 WL 1555133 (D.N.J. Apr. 14, 2014), *aff'd*, 2014 WL 3748214 (D.N.J. July 29, 2014).

[2] On April 29, 2015, AIG filed a complaint for declaratory relief in the Southern District of New York seeking a declaration that PIMCO's Section 11 claims are time-barred (the "Declaratory Judgment Action"). *See* Complaint, *Am. Int'l Grp., Inc. v. Pac. Investment Management Company, LLC, et al.*, Case No. 15-CV-03339 (S.D.N.Y. Apr. 29, 2015) (PAC), Dkt. No. 1. AIG indicated that the Declaratory Judgment Action was related to the nine SDNY Opt-Out Actions (defined below), but Judge Swain declined the case as unrelated. Unlike the nine SDNY Opt-Out Actions, AIG is the plaintiff in the Declaratory Judgment Action and is seeking declaratory relief. In contrast, like the nine other opt-out plaintiffs, PIMCO is a former investor who excluded itself from the Class Action and is asserting a federal securities claim based on the same alleged misstatements and omissions. This action is similar to *Regents of the University of California v. AIG, Inc.*, No. 14-CV-1270, another opt-out action, which was filed in the Northern District of California, voluntarily transferred to the SDNY (only after AIG filed a motion to transfer), and accepted as a related action by Judge Swain.

-3-

## II.   STATEMENT OF FACTS[3]

### A.   Plaintiffs

Plaintiffs are Pacific Investment Management Company LLC and sixty-three investment funds that it manages and/or advises (collectively, "PIMCO") in Orange County, California. Compl. ¶ 32. Plaintiffs allege that they purchased AIG securities in offerings during the period from October 18, 2006 to May 12, 2008 (the "Relevant Period"). *Id.* ¶ 212.

### B.   Defendant

Defendant AIG is a holding company incorporated under Delaware law whose subsidiaries provide insurance and financial services. *Id.* ¶ 34. AIG's principal place of business is in New York, New York. *Id.* AIG's equity and debt securities are, and during the Relevant Period were, traded publicly on the New York Stock Exchange. *Id.*

During the Relevant Period, AIG's subsidiary, AIGFP, which is referred to in the Complaint, was headquartered in Wilton, Connecticut and had offices in other locations, but not in California. *Id.* ¶ 93 n.3.

Virtually all of the alleged misconduct relating to AIG's disclosures over a period of two-and-a-half years emanated from its headquarters in New York where senior officers worked.  Specifically, all of AIG's filings with the SEC were prepared in New York and the investor calls were conducted in New York.

While Plaintiffs allege generally that "AIG conducted business in and/or resided in California at the time of the Offerings" and that "AIG has sufficient contacts with California or property in California, or otherwise purposefully availed itself of the privilege of conducting business in California, including in connection with the Offerings, so as to render the California court system's exercise of

---

[3] AIG accepts the allegations of the Complaint as true solely for purposes of AIG's Motion to Transfer, and reserves the right to challenge those allegations at the appropriate time.

jurisdiction over AIG in this case" (*Id.* ¶ 29), the Complaint contains only minimal factual allegations linking Defendant to California. Moreover, the Complaint fails to link any of AIG's officers and directors alleged misconduct at issue, *i.e.*, the making of allegedly false and misleading statements, to California. The allegation that AIG's "general insurance business was concentrated in the State of California" is irrelevant to the issues set forth in the Complaint. Similarly, given that the focus of the allegations refer to conduct that took place in New York, that some of AIG's underwriters—none of whom are named as Defendants—may have had principal places of business in California is at best an insignificant tie to the State. Compl. ¶ 35.

## C.   Procedural History

### 1.   The AIG Class Action

Beginning in May 2008, eight putative class actions were filed in the SDNY against AIG and certain of its officers and directors alleging violations of the Exchange Act and the Securities Act arising out of statements in AIG's public disclosures concerning its subprime exposure and related losses. *See Id.* ¶ 412-13.[4]

The AIG Class Action proceeded in the SDNY for over six years. Prosecuted by a court-appointed lead plaintiff on behalf of the putative class, the AIG Class Action proceeded through multiple stages including motions to dismiss, motions for reconsideration, motions for judgment on the pleadings, fact discovery (including the production of millions of pages of documents and over 60 depositions), and class

---

[4] In addition, based on similar factual allegations, two shareholder derivative actions and eight actions alleging violations of the Employee Retirement Income Security Act of 1974 were filed and separately consolidated before Judge Swain. *See In re Am. Int'l Grp., Inc. Deriv. Litig.*, No. 07-CV-10464 (S.D.N.Y.) (LTS); *In re Am. Int'l Grp., Inc. ERISA Litig. II*, No. 08-CV-5722 (S.D.N.Y.) (LTS) (KNF). The consolidated derivative action was subsequently dismissed by Judge Swain. *See In re Am. Int'l Grp., Inc. Deriv. Litig.*, 700 F. Supp. 2d 419 (S.D.N.Y. 2010), *aff'd*, 415 F. App'x 285 (2d Cir. 2011). The ERISA action was recently settled subject to final Court approval.

certification discovery, motions and hearings. The AIG Class Action recently settled. On November 7, 2014, the Court signed an order preliminarily approving the proposed settlement and providing for class notice. The Court granted final approval of the settlement on March 20, 2015.

### 2.    The Pending SDNY Opt-Out Actions

Between November 18, 2011 and February 9, 2015, eleven individual cases asserting substantially similar claims to those in the AIG Class Action against AIG, and, in many cases, other defendants, were filed in, or transferred to, the SDNY, including one case that was filed in the Northern District of California and voluntarily transferred to the SDNY after AIG filed a motion to transfer to the SDNY like the current motion.[5] Because two of the opt-out complaints were voluntarily dismissed, there are currently nine opt-out actions pending in the SDNY (collectively, the "SDNY Opt-Out Actions"). Like Plaintiffs' complaint, the SDNY Opt-Out Actions substantially overlap with the allegations contained in the Class Action and concern similar allegations and time periods. All complaints allege misstatements and omissions in nearly all of the same AIG public filings related to

---

[5] *Kuwait Inv. Auth. v. AIG, Inc.*, No. 11-CV-8403 (S.D.N.Y. Nov. 18, 2011); *Oppenheimer Equity Funds, Inc. v. AIG, Inc.*, No. 12-CV-523 (S.D.N.Y. Jan. 20, 2012); *British Coal Staff Superannuation Scheme v. AIG, Inc.*, No. 12-CV-4555 (S.D.N.Y. Jun. 11, 2012); *Pac. Life Funds v. AIG, Inc.*, No. 12-CV-6071 (S.D.N.Y. Aug. 8, 2012); *Stichting Pensioenfonds Metalektro v. AIG, Inc.*, No. 13-CV-6502 (S.D.N.Y. Sept. 13, 2013) *Teachers Ret. Sys. of the State of Ill. v. AIG, Inc.*, No. 13-CV-3377 (S.D.N.Y. May 17, 2013); *Dow30$^{SM}$ Enhanced Premium & Income Fund v. AIG, Inc.*, 13-CV-5612 (N.D. Ill. Aug. 6, 2013); *Regents of the Univ. of Cal. v. AIG, Inc.*, No. 14-CV-1270 (N.D. Cal. Aug. 6, 2013); *GIC Private Ltd. v. AIG, Inc.*, No. 13-CV-6565 (S.D.N.Y. Sept. 16, 2013); *Lord Abbett Affiliated Fund, Inc. v. AIG Inc.*, No. 15-CV-774 (S.D.N.Y. Feb. 2, 2015); *General Electric Pension Trust v. AIG, Inc.*, No. 15-CV-957 (S.D.N.Y. Feb. 9, 2015) *Regents,* (Dkt. No. 25) and *Dow 30* (Dkt No. 38) were voluntarily transferred to the SDNY. *Stichting* (Dkt. No. 37) and *Dow30* (Dkt. No. 57) were subsequently voluntarily dismissed because the Stichting and Dow 30 entities remained in the Class Action.

1  AIG's subprime exposure, unrealized market valuation losses on AIGFP's super

2  senior credit default swap portfolio, and liquidity among other things.

3      Motions to dismiss have been filed in all of the SDNY Opt-Out Actions

4  currently pending before Judge Swain, based, *inter alia,* on statute or repose

5  grounds that AIG intends to make in its forthcoming motion to dismiss this action.[6]

6  Fact discovery is also underway in all but two of the SDNY Opt-Out Actions that

7  were recently filed and is expected to begin shortly in the other two.[7]

8          **3.      This Case**

9      Despite the fact that all of the material events alleged in the Complaint

10  occurred between 2006 and 2008—including the well-publicized events leading up

11  to federal rescue of AIG on September 16, 2008—and despite the recently settled

12  AIG Class Action and numerous other related litigations all proceeding in New

13  York, Plaintiffs delayed filing their Complaint in this action until March 27, 2015,

14  almost seven years after the last set of alleged misrepresentations in Plaintiffs'

15  Complaint here (more than twice as long as the statute of repose period for

16

17  [6] *Kuwait Inv. Auth. v. AIG, Inc.,* No. 11-CV-8403 (Dkt No. 44) (Omnibus brief);
   *Oppenheimer Equity Funds, Inc. v. AIG, Inc.,* No. 12-CV-523, (Dkt. No. 48)

18  (Omnibus brief); *British Coal Staff Superannuation Scheme, et al., v. AIG. Inc.*, No.

19  12-CV-4555 (Dkt. Nos. 52, 54) (Omnibus and individual brief); *Pac. Life Funds v.
   AIG, Inc.,* No. 12-CV-6071, (Dkt. No. 47) (Omnibus brief); *Teachers Ret. Sys. of the*

20  *State of Ill. v. AIG, Inc.,* No. 13-CV-3377 (Dkt. No. 47) (Omnibus brief); *GIC*

21  *Private Ltd. v. AIG, Inc.,* No. 13-CV-6565, (Dkt. Nos. 23, 25) (Omnibus and
   individual brief); *The Regents of the University of California v. AIG, Inc.*, No. 14-

22  CV-1270, (Dkt. Nos. 45, 47) (Omnibus and individual brief); *General Electric*

23  *Pension Trust v. AIG, Inc.*, No. 15-CV-957 (Dkt. No. 21); *Lord Abbett Affiliated
   Fund, Inc., v. AIG, Inc.*, No. 15-CV-774, (Dkt. No. 28).

24

25  [7]  Excluding *Lord Abbett* and *GE*, the SDNY Opt-Out Actions are coordinated

26  for purposes of discovery via an omnibus case management orders. *Kuwait
   Investment Authority v. AIG, Inc. et al.,* No. 11-CV-8403 (Dkt. No. 34). While the

27  *Lord Abbett* and *GE Funds* complaints were filed after entry of the case

28  management orders, they are expected to be coordinated.

1 Securities Act claims). *See* Compl. ¶¶ 211, 216, 222-24. Like the Class Action

2 Complaint and several of the opt-out actions, the Complaint here asserts claims

3 under Section 11 of the Securities Act. *Id.* ¶¶ 416-25. While Plaintiffs expressly

4 seek to apply *American Pipe* tolling to extend the statute of repose for their claims

5 during the pendency of the AIG Class Action, (*Id.* ¶¶ 412-15), those claims are time-

6 barred under the applicable statute of repose.

7 **III. <u>ARGUMENT</u>**

8      Section 1404(a) provides a district court with broad discretion to transfer a

9 case "[f]or the convenience of parties and witnesses, in the interest of justice," "to

10 any other district or division where it might have been brought." 28 U.S.C. §

11 1404(a). Clearly, the SDNY is a district where this action might have been brought,

12 so the only issue before this Court is whether transfer is appropriate under the

13 relevant factors.

14      "In ruling on a motion to transfer pursuant to § 1404(a), the Court must

15 evaluate three elements: (1) convenience of the parties; (2) convenience of the

16 witnesses; and (3) interests of justice." *See Rowsby v. Gulf Stream Coach, Inc.*,

17 2009 WL 1154130, at *1 (C.D. Cal. Feb. 9, 2009) (Carter, J.). To determine whether

18 "convenience" favors transfer, the Court may consider the following factors: "(1)

19 the convenience of the parties, (2) the convenience of the witnesses—including the

20 willingness of witnesses to appear, the ability to subpoena witnesses, and the

21 adequacy of deposition testimony, (3) the accessibility to records and documents,

22 (4) the location where the conduct complained of occurred, and (5) the applicability

23 of each forum state's substantive law." *Irvine Pharm. Servs., Inc. v. Arnold*, 2008

24 WL 4792513, at *2 (C.D. Cal. Oct. 28, 2008) (Carter, J.); *see also Broadcast Data*

25 *Retrieval Corp. v. Sirius Satellite Radio, Inc.*, 2006 WL 1582091, at *2 (C.D. Cal.

26 June 6, 2006) ("[i]n determining the convenience of the parties and witnesses and

27 the interests of justice, the Court may consider multiple factors, including, inter alia:

28 (1) the plaintiffs' choice of forum; (2) the respective parties' contacts with the

forum; (3) the contacts relating the plaintiffs' claims for relief in the chosen forum;
(4) the ease of access to sources of proof; (5) familiarity of each forum with
applicable law; and (6) the availability of compulsory process to compel attendance
of unwilling non-party witnesses").

A.     The "Convenience" Factors Weigh In Favor Of Transfer

        1.     Plaintiffs' Choice Of Forum Should Be Afforded Little
               Deference

        "[A] plaintiff's choice of forum should be given less weight when it is not
'the place where the operative facts of the action occurred,'" even if a plaintiff
resides there. *Shalaby v. Newell Rubbermaid, Inc.*, 2007 WL 3144357, at *6 (N.D.
Cal. Oct. 24, 2007) (citation omitted); *see also Bradley-Brown v. Am. Home
Mortgage Servicing, Inc.*, 2012 WL 254064, at *2-4 (C.D. Cal. Jan. 25, 2012)
(Carter, J.) (granting transfer to Northern District of Texas where "the Northern
District of Texas is a more convenient venue because (1) most witnesses and
documents are located in Texas; (2) Texas is significantly more convenient for
Defendants and will not be any less convenient for Plaintiff; (3) the factual basis for
Plaintiff's claims took place in Texas; and (4) under the circumstances, Plaintiff's
choice of forum is given little weight."); *Broadcast Data Retrieval Corp.*, 2006 WL
1582091, at *3 ("Unlike the Southern District of New York, the forum chosen by
Plaintiffs lacks a significant connection to the activities alleged in the FAC and
simply has no particular interest in the subject matter of this action. Accordingly,
Plaintiffs' choice of forum is entitled to minimal deference, especially in light of
BDRC's efforts to forum shop."); *Ruiz v. Affinity Logistics Corp.*, 2005 WL
5490240, at *2 (N.D. Cal. Nov. 7, 2005) ("If the operative facts have not occurred
within the forum of original selection . . . [a] plaintiff's choice is only entitled to
minimal consideration.") (internal quotation marks and citation omitted). Plaintiffs'

choice of forum should be given little deference.[8]  Nearly all of the alleged wrongdoing in the Complaint took place in New York, including the crux of the purported fraud—the dissemination of allegedly false and misleading statements by AIG in New York.

"Because this is a securities fraud action, plaintiffs' claims are based on defendant['s] alleged misrepresentations and omissions, which are deemed to occur in the district where they are transmitted or withheld, not where they are received." *In re Yahoo! Inc.*, 2008 WL 707405, at *8 (C.D. Cal. Mar. 10, 2008) (internal quotation marks and citation omitted). Here, the alleged misleading information was largely prepared and disseminated by AIG from its headquarters in New York.  All of the investor calls were conducted in New York. In contrast, absolutely *no* misconduct is alleged to have occurred in California. Where, as here, "the operative facts giving rise [to Plaintiffs' claims] did not occur in this district . . . [it] giv[es] this district no particular interest in this litigation." *Ctr. for Food Safety v. Vilsack*, 2011 WL 996343 (N.D. Cal. Mar. 17, 2011). Moreover, Plaintiffs' choice of forum should be discounted because there are *nine* related litigations, raising the exact same allegations, pending in the SDNY.

Finally, Plaintiffs' choice of forum should be given little deference to the extent Plaintiffs are forum shopping to avoid the impact of *IndyMac*, a decision by the Second Circuit that would bar their claim. In *IndyMac*, the Second Circuit held that the repose period for claims under the federal securities laws cannot be tolled. 721 F.3d at 109. While Plaintiffs' claims may be equally barred in the Ninth Circuit (the Ninth Circuit has not squarely addressed the issue), it strongly appears that

---

[8] While some California courts have considered Plaintiffs' choice of forum under the interest of justice prong, other courts have considered plaintiff's choice of forum as a matter of convenience. Compare Irvine Pharm. Servs., Inc., 2008 WL 4792513, at *3 with Cluck v. IKON Office Solutions, Inc., 2012 WL 1610789, at *2 (N.D. Cal. May 8, 2012).  As explained in Section I., A., 1, under either factor, PIMCO's choice of forum should be afforded little deference.

1    Plaintiffs are trying to elude *IndyMac* in the hopes of obtaining a more favorable

2    result in a different jurisdiction. *See* Compl. ¶¶ 412-15 (pleading that Plaintiffs'

3    claims are tolled). This also weighs against Plaintiffs. *See Gerin v. Aegon USA, Inc.*,

4    2007 WL 1033472, at *7 (N.D. Cal. Apr. 4, 2007) (plaintiff's forum choice

5    accorded "little deference" if there is "any indication that plaintiff's choice of forum

6    is the result of forum shopping.") (citation omitted); *see also Madani v. Shell Oil*

7    *Co.*, 2008 WL 268986, at *3 (N.D. Cal. Jan. 30, 2008) ("[d]iscouraging forum-

8    shopping provides a strong reason to transfer"); *Wireless Consumers Alliance, Inc.*

9    *v. T-Mobile USA, Inc.*, 2003 WL 22387598, at *5 (N.D. Cal. Oct. 14, 2003)

10   ("evidence of plaintiff's attempt to avoid a particular precedent from a particular

11   judge weighs heavily . . . and would often make the transfer of venue proper"); *Yang*

12   *v. Odom*, 409 F. Supp. 2d 599, 603 (D.N.J. 2006) (transferring securities case where

13   "Plaintiffs chose to wait until the statute of limitations on their claims had long

14   expired" in the other forum and chose "a district which has very little connection to

15   this dispute"); *Schmid Labs., Inc. v. Hartford Accident & Indem. Co.*, 654 F. Supp.

16   734, 737 (D.D.C. 1986) (transfer appropriate to curtail forum choices made

17   "exclusively or primarily to obtain or avoid specific precedents, particularly in

18   circumstances such as these where the relevant law is unsettled and the choice of

19   forum may well dictate the outcome of the case").

20          This is not the first time that opt-out plaintiffs have sought to evade the

21   Second Circuit's holding in *IndyMac* after opting out of a putative class action

22   settlement with AIG.  In 2011, certain putative class members opted out of a

23   settlement in a separate class action against AIG in the SDNY and filed an

24   individual action in federal district court in New Jersey in the Third Circuit which,

25   like the Ninth Circuit, has not yet addressed the specific tolling issue. *See Franklin*

26   *U.S. Rising Dividends Fund*, 2014 WL 1555133, at *1.  The district court in New

27   Jersey acknowledged that "[t]here can be no doubt that this matter is venued here"

28   to avoid *IndyMac*. *Id.* at *1.  The court granted AIG's motion to transfer that action

-11-

to the SDNY, finding "the Court cannot condone forum shopping at the expense of judicial resources, efficiency, and in disregard of the [applicable transfer] factors." *Id*. at *1, 5, 6.  The court added that transfer was appropriate because the "SDNY already has experience with these same issues: involving substantially the same transactions, occurrences, and issues," "the claims arose in, and the center of gravity of the Parties' dispute is, New York," and "New York has a stronger local interest in the outcome of this litigation." *Id*. at *6, 8, 9. For the same reasons, the same result is necessitated here.

### 2.    New York Is The Most Convenient Forum For The Parties And Witnesses

"The convenience of the witnesses is the most important factor in determining whether to transfer venue." *Bradley-Brown, Inc.*, 2012 WL 254064, at *2. The SDNY is demonstrably the most convenient forum for almost all of the parties and witnesses, including non-party witnesses. Defendant AIG is located in New York. *See* Compl. ¶ 34. All of the AIG executives listed as "Relevant Non-Parties" in the Complaint (the "Relevant Executives") were named as defendants in the AIG Class Action and almost all of them reside in or close to New York. Decl. ¶ 5. Neither Defendant nor any of the Relevant Executives are located in California. *See* Decl. ¶¶ 5-6; Compl. ¶ 34. Virtually all of the fact witness depositions (excluding those of Lead Plaintiff and its representatives) took place in New York, including some of the main witnesses in the case, such as, for example, all of the Relevant Executives (except Mr. Herzog, who was not deposed). Compl. ¶ 36-44. *See* Decl. ¶ 7, Ex. 2. Ten of the twelve witnesses deposed outside of New York were experts or associated with Lead Plaintiff, witnesses with no direct knowledge of the supposed misconduct. Decl. ¶¶ 4, 7, Ex. 2. The other two witnesses were deposed in Vermont and Virginia. Decl. ¶¶ 4, 7, Ex. 2. AIG has New York-based counsel who have been litigating these claims for over six years. It would clearly be burdensome and costly to force AIG to litigate not only in an inconvenient foreign jurisdiction, but also on

multiple fronts (the SDNY and C.D. Cal.). It would likewise be costly and inconvenient to obtain the attendance of witnesses in California, especially for those who reside primarily outside the United States. *See Irvine Pharm. Servs., Inc.,* 2008 WL 4792513, at *4 (granting motion to transfer to Western District of Wisconsin where that venue was more convenient for material witnesses, had better accessibility to the documents, and costs would more greatly affect the defendant); *Jarvis v. Marietta Corp.*, 1999 WL 638231, at *2 (N.D. Cal. Aug. 12, 1999) (transferring action to Northern District of New York where parties were already litigating a related claim in New York state court and "[f]urther, of the witnesses identified in the parties' initial disclosures, a majority are located either in New York, the eastern United States or Canada. . . . Finally, many of the witnesses provided by Defendant are current Marietta employees").

The only local witnesses, and the only witnesses for whom this forum is more convenient, are presumably those associated with Plaintiffs (though if Plaintiffs relied on any third-party investment advisors their location is currently unknown to AIG). But Plaintiffs' location is not decisive. AIG and its witnesses will be key to Plaintiffs' claims, particularly with regard to the facts underlying the allegedly misleading disclosures at issue. The SDNY is clearly the more convenient forum.

Nor can Plaintiffs legitimately claim that they will be unfairly inconvenienced by transfer of this case to the SDNY. In the seven years since the first class action complaints were filed against AIG in 2008, Plaintiffs, themselves, have repeatedly filed lawsuits (largely represented by the same counsel here) against other parties in New York state and federal courts.[9]

---

[9] *See e.g., BlackRock Allocation Target Shares Series S Portfolio, et al., v. U.S. Bank Nat'l Assoc.*, No. 14-CV-9401 (S.D.N.Y.) (including as plaintiffs various PIMCO funds that are plaintiffs in this action); *Fixed Income Shares: Series M, et al., v. Citibank N.A.*, No. 14-CV-9373 (S.D.N.Y.) (including as plaintiffs various PIMCO funds that are plaintiffs in this action); *BlackRock Allocation Target Shares:*

### 3.     The SDNY Has The Greater Ease Of Access To Sources Of Proof

Almost all of AIG's present and former employees relevant to this action are in New York. *See Bradley-Brown*, 2012 WL 254064, at *2; *see also Irvine Pharm. Servs., Inc.*, 2008 WL 4792513, at *4; *Jarvis,* 1999 WL 638231, at *2 (transferring case where, *inter alia*, "the majority of documents . . . are located at Marietta's New York headquarters"); *Foster v. Nationwide Mut. Ins. Co.,* 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007) ("'[D]ocuments pertaining to defendants' business practices are most likely to be found at their principal place of business.'") (citation

*Series S Portfolio, et al., v. Bank of N.Y. Mellon, et al.*, No. 14-CV-9372 (S.D.N.Y.) (including as plaintiffs various PIMCO funds that are plaintiffs in this action); *BlackRock Allocation Target Shares: Series S Portfolio, , et al., v. Wells Fargo Bank, Nat'l Assoc.*, No. 14-CV-9371 (S.D.N.Y.) (including as plaintiffs various PIMCO funds that are plaintiffs in this action); *BlackRock Balanced Capital Portfolio (FI), et al., v. Deutsche Bank Nat'l Trust Co.,* No. 14-CV-9367 (S.D.N.Y.) (including as plaintiffs various PIMCO funds that are plaintiffs in this action); *BlackRock Balanced Capital Portfolio (FI), et al., v. HSBC Bank USA, Nat'l Assoc.*, No.14-CV-9366 (S.D.N.Y.) (including as plaintiffs various PIMCO funds that are plaintiffs in this action); *BlackRock Allocation Target Shares: Series S Portfolio, et al., v. U.S. Bank Nat'l Assoc.*, No. 651864/2014 (N.Y. Sup. Ct.) (including as plaintiffs various PIMCO funds that are plaintiffs in this action); *BlackRock Balanced Capital Portfolio (FI), et al., v. Deutsche Bank Nat'l Trust Co*., No. 651865/2014 (N.Y. Sup. Ct.) (including as plaintiffs various PIMCO funds that are plaintiffs in this action); *BlackRock Allocation Target Shares: Series S Portfolio, et al., v. Bank of N.Y. Mellon*, No. 651866/2014 (N.Y. Sup. Ct.) (including as plaintiffs various PIMCO funds that are plaintiffs in this action); *BlackRock Allocation Target Shares: Series S. Portfolio, et al., v. Wells Fargo Bank, Nat'l Assoc.*, No. 651867/2014 (N.Y. Sup. Ct.) (including as plaintiffs various PIMCO funds that are plaintiffs in this action); *BlackRock Balanced Capital Portfolio (FI), et al., v. Citibank N.A.*, No. 651868/2014 (N.Y. Sup. Ct.) (including as plaintiffs various PIMCO funds that are plaintiffs in this action); *BlackRock Core Active Libor Fund B, et al., v. HSBC Bank USA, Nat'l Assoc.*, No.  651869/2014 (N.Y. Sup. Ct.) (including as plaintiffs various PIMCO funds that are plaintiffs in this action); *Bank of N.Y. Mellon v. Countrywide Fin. Corp.,* No. 113985/2009 (N.Y. Sup. Ct.) (including as plaintiffs plaintiff in this action, Pacific Investment Management Company LLC).

1    omitted). Indeed, the merits depositions conducted in the AIG Class Action

2    underscore the New York connection. Excluding Lead Plaintiff's representatives

3    and its affiliates, forty-five fact witnesses were deposed, including all of the

4    Relevant Executives in this matter except Mr. Herzog. *See* Decl. ¶ 7, Ex. 2. Forty-

5    three of those forty-five fact witness depositions, including the depositions of each

6    of the listed Relevant Executives (except Mr. Herzog), took place in New York—

7    none of them took place in California. *See* Decl. ¶ 7, Ex. 2. Moreover, almost all of

8    the relevant documents, including from AIGFP in Wilton, Connecticut and London,

9    England, have already been collected in connection with the AIG Class Action and

10   are in the possession of AIG's attorneys in New York. Decl. ¶ 3.

11        "[W]hile 'developments in electronic conveyance have reduced the cost of

12   document transfer somewhat, the cost of litigation will be substantially lessened if

13   the action is venued in the same district where most of the documentary evidence is

14   found'"—the SDNY. *Foster,* 2007 WL 4410408, at * 6 (citation omitted); *see also*

15   *Ward v. Fluor Enter., Inc.*, 2011 WL 778720, at *4 (N.D. Cal. Mar. 1, 2011) ("the

16   possibility that documents can be produced electronically does not alter the

17   conclusion that the cost of litigation will likely be less if the case were venued in the

18   forum where the evidence is located"). It will be demonstrably easier for the parties

19   and relevant witnesses to appear for proceedings and trial in the SDNY than in

20   California. Thus, the SDNY has greater access to the sources of proof.

###        4.        New York Has The Strongest Local Interest In the Controversy

21

22        As discussed above, the only alleged connections between this case and

23   California are that the PIMCO funds are managed and/or advised by Pacific

24   Investment Management Company LLC in California—yet the vast majority of the

25   funds are organized under the laws of another jurisdiction—and that certain

26   underwriters of the AIG securities offerings at issues had their principle place of

27   business in California and/or supposedly directed their sales at California residents.

28

*See* Compl. ¶ 35. In contrast, AIG was and is headquartered in New York. New York is the primary location of the material events in this case and where the impugned disclosures were prepared and disseminated from. *See Jarvis*, 1999 WL 638231, at *7 ("While California does have an interest in protecting its citizens . . . New York has a greater local interest in the controversy" because documents, witnesses, and underlying events took place in New York). The securities at issue were purchased through U.S. broker-dealers on the New York Stock Exchange. Compl. ¶ 217. Additionally, as the Complaint concedes, various New York-based regulators monitored AIG relating to the events at issue during the Relevant Period. *See* Compl. ¶¶ 173, 203 (New York State Insurance Superintendent); *id.* ¶ 185 (Federal Reserve Bank of New York); *id.* ¶ 54 (New York State Attorney General). As these facts and the numerous related AIG litigations in the SDNY attest, New York has a profound interest in adjudicating this matter.

### 5. This Case Will Benefit From Coordination With The Pending SDNY Actions

Judge Swain has for more than six years supervised the Class Action and the SDNY Opt-Out Actions. She has conducted detailed analyses of many of the same issues raised by Plaintiffs on multiple occasions, including in her decisions on defendants' motions to dismiss, motions for reconsideration, and motions for judgment on the pleadings in the AIG Class Action. Judge Swain recently approved the settlement of the AIG Class Settlement. Additionally, nine opt-out actions—each of which have motions to dismiss pending—are currently pending before Judge Swain, four of which assert Section 11 claims based on the same underlying facts. *See Madani*, 2008 WL 268986, at *2 (finding where judge had presided over similar cases for over three years, that judge "is in the best position to determine substantive issues raised in the present litigation, including the threshold question, raised by Defendants' pending motion to dismiss"). Moreover, Plaintiffs should not be allowed to get around transfer based on tactical pleading.

The proceedings in this case, including motion practice, discovery and trial, will obviously benefit from coordination with the nine pending SDNY Opt-Out Actions overseen by the same Judge and Magistrate—seven of which, as noted, are subject to joint case management orders. *See Glaxo Grp. Ltd. v. Genetech, Inc.*, 2010 WL 1445666, at *3 (N.D. Cal. Apr. 12, 2010) ("[T]ransferring this related action to the same court [as prior related cases] is the most effective administration of justice."); *see also Cohn v. Oppenheimerfunds, Inc.*, 2009 WL 3818365, at *6 (S.D. Cal. Nov. 12, 2009) (transferring securities opt-out case with certain unique issues to forum where class actions and other related litigation were pending for "the possible consolidation of discovery and the conservation of time, energy and money, and the avoidance of the possibility of inconsistent judgments"). Moreover, because Judge Swain has presided over the Class Action for over six-years, and because nine motions to dismiss are currently pending before her dealing with similar facts and issues—including the dispositive threshold question whether Plaintiffs' claim against AIG is untimely under the three-year statute of repose provided in Section 13 of the Securities Act—Judge Swain not only has the benefit of familiarity but she already has the benefit of completed briefing on the issues present here from multiple parties in the SDNY Opt-Out Actions.[10]

**B.    The "Interest of Justice" Weighs In Favor Of Transfer**

For similar reasons as the foregoing factor, this prong clearly and decisively favors transfer. "'[T]he pendency of a similar action in the transferee court is a universally recognized reason for granting a change of venue.'" *Pac. Coast Fed'n v. Gutierrez*, 2006 WL 194507, at *2 (N.D. Cal. Jan. 24. 2006) (citation omitted); *see*

---

[10] Even if Judge Swain is not assigned this case after transfer, there is yet another judge, the Honorable Paul A. Crotty, who is now overseeing AIG's Declaratory Judgment Action which raises similar issues. And as noted, the SDNY is the locus of the alleged wrongdoing and clearly more convenient for the parties and witnesses, and the law of the Second Circuit has and will govern all other related cases.

1  *also Rainin Instrument, LLC v. Gilson, Inc.*, 2006 WL 708660, at *4 (N.D. Cal. Mar.

2  16, 2006) (transferring case in the "interest of justice," where two related matters

3  were pending in transferee district and, thus, it was "intimately familiar with the

4  issues and evidence central to this case").

5          From the extensive prior related litigation involving AIG in their courts, the

6  Judge and Magistrate in the SDNY have "expertise" with the central allegations and

7  legal issues, which "can only promote the efficient resolution of this conflict."

8  *Glaxo*, 2010 WL 1445666, at * 3. Indeed, the Complaint is substantially similar to

9  the Class Action Complaint and SDNY Opt-Out Actions. *See* Decl. ¶ 7, Ex. 1.

10         Moreover, transferring this case to the SDNY, where Second Circuit law

11  governs, would avoid the risk of inconsistent rulings on the same claims and factual

12  allegations. *See Cluck v. IKON Office Solutions, Inc.,* 2012 WL 1610789, at *3

13  (N.D. Cal. May 8, 2012) ("'Litigation of related claims in the same tribunal is

14  strongly favored because it facilitates efficient, economical and expeditious pre-trial

15  proceedings and discovery and avoids duplic[ative] litigation and inconsistent

16  results.'") (citation omitted; alteration in original). Rather than this Court expending

17  the time and effort to get up to speed on the complex merits issues in this case, "the

18  interests of justice and conservation of resources of both the judicial system and the

19  parties would be strongly served by transferring this matter to [the SDNY]." *Rainin*,

20  2006 WL 708660, at *4.

21         Importantly, transfer will ensure consistent rulings on the same issue

22  applicable to similarly situated plaintiffs. *Jolly v. Purdue Pharma L.P.*, 2005 WL

23  2439197, at *2 (S.D. Cal. Sept. 28, 2005) ("Litigation of related claims in the same

24  tribunal is strongly favored because it facilitates efficient, economical and

25  expeditious pre-trial proceedings and discovery and avoid duplic[ative] litigation

26  and inconsistent results."); *see also Wireless Consumers Alliance, Inc.*, 2003 WL

27  22387598, at *6 (avoiding "the risk of conflicting rulings on the same issues" is a

28  factor weighing in favor of transfer); *Callaway Golf Co. v. Corporate Trade Inc.*,

-18-

1  2010 WL 743829, at *8 (S.D. Cal. Mar. 1, 2010) (finding "the transfer of this action

2  to the Southern District of New York would serve the interest of justice due to the

3  possible consolidation of discovery and the conservation of time, energy and money,

4  and the avoidance of the possibility of inconsistent judgments"). This factor is of

5  particular relevance given that motions to dismiss are pending in all nine of the

6  SDNY cases, and AIG intends to move to dismiss the Complaint here on at least one

7  of the grounds at issue in those cases.

8  **IV.    CONCLUSION**

9         For the foregoing reasons, this case should be transferred to the SDNY

10 pursuant to Section 1404(a).

11 DATED:  May 8, 2015                    WEIL, GOTSHAL & MANGES LLP

12

13                                        By:  _____/s/ Joseph S. Allerhand_____

14                                             Joseph S. Allerhand (to be admitted pro
                                               hac vice)

15                                             Robert F. Carangelo (to be admitted pro
                                               hac vice)

16                                             Stacy Nettleton (to be admitted pro hac
                                               vice)

17

18

19                                        GREENBERG GROSS LLP

20

21                                        By:  _____/s/ Alan A. Greenberg_____

22                                             Alan A. Greenberg

23                                             Bret D. Hembd
                                               Adam Sechooler

24

25                                             Counsel for Defendant

26                                             AMERICAN INTERNATIONAL
                                               GROUP, INC.

27

28

DEFENDANT AMERICAN INTERNATIONAL GROUP INC.'S MOTION TO TRANSFER VENUE TO S.D.N.Y.
PURSUANT TO 28 U.S.C. § 1404